[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM
The plaintiff Jeremiah Wallace was injured in a motor vehicle accident on September 8, 1994. The accident was the fault of another driver, Alice Roberts. The defendant Connecticut Union Insurance Company provided a policy of underinsured motorist insurance to the plaintiff, with a policy limit of $300,000. The plaintiff has brought this action against the defendant claiming the benefits of that insurance policy. The plaintiff has filed an offer of judgment for $190,000.
The plaintiff began his employment with the Waterbury Police Department in 1962. Between 1962 and 1994, he contributed to, or contributions were made on his behalf to, a pension fund maintained by the City of Waterbury. These contributions were lawfully allowed in lieu of Social Security contributions, which the plaintiff never paid, and consequently the plaintiff is not entitled to either social security disability or social security retirement benefits. The plaintiff had a vested interest in the pension plan at the time of the accident. In 1994, the plaintiff would have been eligible to retire with a service pension had he so elected, because of his more than thirty years of active service. He had not so elected, however, and was on duty when he suffered the injuries in the accident.
The Waterbury City Charter also provided that the plaintiff was entitled to disability benefits in the event he became totally and permanently disabled during the performance of his duties. Further the plaintiff received certain benefits under the provisions of the Workers' Compensation Act, under the indemnity provisions and for payments for medical expenses. And finally since Ms. Roberts was determined to be the tortfeasor, her liability insurance company paid out its policy limits of $20,000.
As of August 8, 2001, the plaintiff had received the following benefits:
Workers' Compensation — indemnity $ 27,842.10
Workers' Compensation — medical $ 7,204.07
Disability Retirement — $ 3,249.07
per month $214,438.62
Tortfeasor payout $ 20,000
The defendant's policy provides: CT Page 14867-o
The limit of liability shall be reduced by all sums:
1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible . . .; and
2. Paid or payable because of the bodily injury under any of [sic] following or similar law:
a. Workers' Compensation law: or
b. Disability benefits law . . .
The defendant has moved for summary judgment, arguing that under the undisputed facts of this case, Its "limit of liability" is effectively zero. The defendant asserts that this is so because all one has to do is add up the dollar value of the benefits paid on behalf of the plaintiff — a total of $269,484.79 — and also add an additional ten more months of disability benefit payments, and the defendant's whole $300,000 limit is exhausted: it owes the plaintiff nothing under the policy.
The plaintiff opposes summary judgment. based on some technical and some not-so-technical grounds: 1) that the case is assigned for trial and the defendant has not requested nor been granted leave to move for summary judgment under Conn. Practice Book § 17-44; 2) that the affidavit of Palma Brustat calculating the amount of the plaintiff's disability benefits is not made on personal knowledge; 3) that the law no longer permits a set-off for disability benefit payments such as that described in the language of the insurance contract; 4) that the amount and nature of the workers' compensation and disability benefits payments are materially in dispute; and 5) that the possibility of interest on the offer of judgment creates a set of unknown facts as to the amount of the defendant's ultimate liability to the plaintiff.
Although the court is persuaded by only one of these five arguments, the court will address the others briefly.
 FAILURE TO MOVE FOR LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT
Trial in this matter is scheduled for December 12, 2001, less than two months away. Conn. Prac. Book § 17-44 indeed requires that a motion for leave to move for summary judgment be granted by the court before the motion for summary judgment will be entertained. No such motion for leave CT Page 14867-p has been filed here. Both sides have thoroughly briefed all issues raised in the Motion for Summary Judgment, however. That Motion was first filed in July 2001, in plenty of time to have the matter decided without interfering with trial or trial preparation. This court would grant such a motion for leave were it now to be filed. The court will not, therefore, refuse in this instance to decide the Motion for Summary Judgment because of the technical failure of the defendant to first obtain leave to file the motion.
 THE INADEQUACY OF THE PALMA BRUSTAT AFFIDAVIT
The affidavit of Palma Brustat contains a calculation of the largest category of benefits paid for the plaintiff — the "disability retirement benefits." Palma Brustat is employed as the Pension and Benefits Administrator of the City of Waterbury. At the time Brustat signed the affidavit, Brustat knew that the plaintiff was receiving disability retirement benefits and knew the monthly amounts and the effective start date based on the information supplied by Douglas Rinaldi, Risk Manager for the City, and on the arithmetic actually performed by the defendant's attorney. The court is unpersuaded that these facts undermine the affidavit of Brustat. The affidavit appears reliable, especially in light of the lack of any affidavit with contrary information.
 THE CHANGE IN THE LAW REGARDING "DISABILITY" BENEFIT PAYMENTS
The treatment of disability payments in uninsured and underinsured motorist policies has been the subject of several clarifications and changes in the law in the last three years. In Vitti v. AllstateInsurance Company, 245 Conn. 169 (1998), contract language virtually identical to that here regarding reduction of limits on account of disability payments was upheld as consistent with the then-existing statutes, infra. Moreover, it was held not to contravene public policy.Id. Effective October 1, 2000, Public Act No. 00-143 amended Conn. Gen. Stat. § 38a-336 (b), so that an insurer could no longer write a policy that provided for a reduction of uninsured or underinsured motorist coverage limits or benefits payable for amounts received by the insured for Social Security disability benefits paid or payable pursuant to the Social Security Act, 42 U.S.C. § 301, et seq.
The plaintiff argues that the implication of this legislative change is that a provision in any insurance policy that provides for a reduction on account of any kind of disability benefit is void as against public CT Page 14867-q policy. The court cannot interpret the legislative change in so broad a fashion. Except with respect to benefits under the federal Social Security Act, and for policies written after October 1, 2000, the holding in Vitti, supra, that an insurer can provide for such a reduction, is still valid.
 THE AMOUNT AND NATURE OF THE BENEFITS
Though the Waterbury City Charter provides for disability benefits to a police officer injured in the line of duty, the plaintiff in this case was also entitled and may remain entitled to his service pension as a vested benefit of his many years of employment. The plaintiff was entitled to both such benefits at the time he elected the disability over a straight service pension because it was a slightly higher amount. He argues that if there is to be a set-off, it should be limited only to the disability portion of his retirement. The papers submitted by both sides are entirely devoid of any information about how these two benefit plans are related, if at all.
On the basis of the submissions, it remains a material fact in dispute as to whether there is a "disability" portion of the plaintiff's pension benefits. distinct from the rest, such that the whole amount ought not be characterized as a disability benefit. Moreover, as was conceded inVitti but about which there appears to be no concession here, the question remains whether the sole reason for the plaintiff's disability is the accident.[1] These missing facts, together with other disputes about how other payments were characterized and credited, have not been developed in the submissions but remain to be determined after the submission of a more complete stipulation of facts or after an evidentiary hearing.[2] There Is simply an incomplete set of information upon which the court could base any finding of how much of a reduction the defendant might be entitled to, on the papers submitted so far.
 ISSUE OF INTEREST ON THE OFFER OF JUDGMENT
The plaintiff argues that interest on his offer of judgment might well exceed the policy limits so that summary judgment is inappropriate for that reason. The problem is that the interest is not calculated based on the amount of the verdict, but on the amount the plaintiff eventually recovers. Conn. Gen. Stat. § 52-192a(b) provides:
 (b) After trial the court shall examine the record to CT Page 14867-r determine whether the Plaintiff made an "offer of judgment" which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his "offer of judgment," the court shall add to the amount so recovered twelve per cent annual interest on said amount, computed from the date such offer was filed in actions commenced before October 1, 1981. In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the "offer of judgment" was filed not later than eighteen months from the filing of such complaint.
The statute specifies that interest shall be calculated from the amount "the plaintiff has recovered," not the amount of the verdict. The amount specified in a verdict can undergo changes for a variety of reasons before it is recovered by a plaintiff. There can be a collateral source reduction, see, e.g., Pajor v. Town of Wallingford, 47 Conn. App. 365
(1997) (rev'd on other grounds), cert. denied, 244 Conn. 917 (1998); there can be a remittitur, Civiello v. Owens-Corning FiberglassCorporation, 208 Conn. 82 (1988); or, as here, the amount recovered can be circumscribed by the limits of an insurance policy, whatever those limits may be.
The plaintiff is correct, however, that a determination of this matter on summary judgment is inappropriate and premature.
CONCLUSION
The papers of the parties are insufficient to decide this matter on summary judgment. A fuller factual record must be developed for the court to make any final determinations about the limits of the defendant's liability based on the policy language. The Defendant's Motion for Summary Judgment is denied.